■ DANIEL A. YALANGO, an Incompetent, by ALAN P. GOLDBERG, the Committee of His Property, Appellant, et al., Plaintiff, v A. JOHN POPP et al., Defendants; O'CONNELL AND ARONOWITZ, P. C., Respondent. [605 NYS2d 557] —Weiss, P. J. Appeals from an order and amended order of the Supreme Court (Kahn, J.), entered June 9, 1992 and June 18, 1992 in Albany County, which, inter alia, granted a motion by O'Connell and Aronowitz, P. C. for counsel fees.

Plaintiff Daniel A. Yalango suffered serious injuries resulting in permanent and severe brain damage allegedly as the result of medical malpractice committed at two hospitals. The law firm of O'Connell and Aronowitz, P. C. was retained to prosecute the claims. With diligent prosecution of the action, pretrial settlements of $1,300,000 from defendant Albany Medical Center Hospital and $630,000 from defendant Ellis Hospital were achieved. In this proceeding O'Connell and Aronowitz has moved for an order increasing its legal fee in excess of the fee set forth in the schedule in Judiciary Law § 474-a (2) which totaled $338,731.34.* Instead, the law firm sought one third of the net settlement proceeds, i.e., $629,105.80. Supreme Court granted the motion and Yalango, through the committee of his property, appeals contending that no extraordinary circumstances exist and that the statutory schedule adequately compensated legal counsel.

---

* Initially, the request pertained only to the $1,300,000 settlement with Albany Medical Center Hospital, but was expanded to include the additional $630,000 settlement when Ellis Hospital settled.

Judiciary Law § 474-a (4) provides for a deviation from the statutory schedule where due to extraordinary circumstances the compensation provided is inadequate. There is no question in this matter but that competent legal counsel diligently pursued a very difficult case to a successful pretrial settlement. The determination of whether a fee greater than prescribed in the statutory schedule should be approved is specifically left to the discretion of the court (Judiciary Law § 474-a [4]; *Hovanec Bldrs. & Dev. Corp. v Hines,* 173 AD2d 951). The record here demonstrates the extraordinary result achieved as the result of the initiative, diligence, thorough and skilled professional legal services provided which included time, effort, ingenuity and dedication in securing 12 separate expert opinions, some from Florida, Massachusetts and Maryland. Albany Medical Center Hospital paid $300,000 out of its own funds in addition to the full amount of its liability insurance policy, $1,000,000. In addition to the documentation provided by O'Connell and Aronowitz, a court-appointed guardian ad litem reported in detail on the services and the results. The guardian ad litem agreed that liability was tenuous against both hospitals and opined that a jury could very well render a verdict for no cause of action. His report recognized the difficulty in proving malpractice and proximate cause and recommended approval of the application. It should further be noted that Yalango's wife, also a plaintiff in this action, supported the application.

The determination of whether counsel fees are reasonable under the circumstances is a matter within the sound discretion of a trial court and should not be disturbed absent abuse of that discretion *(Matter of Freeman,* 34 NY2d 1, 9-10). The determination involves many factors: an evaluation of the time and labor required, the difficulty of the questions posed and the skill required to cope with the problems, the attorney's experience, ability and reputation, the amount involved and the benefits produced by those services, the customary fees charged by others for similar services, the contingency or certainty of the compensation, the results obtained and the responsibilities involved *(supra,* at 9).

The statute requires only that the court "briefly stat[e] the reasons for granting the greater compensation" and make a finding of "extraordinary circumstances" (Judiciary Law § 474-a [4]); it does not require the court to either set forth how it weighed the various factors *(Hovanec Bldrs. & Dev. Corp. v Hines, supra)* or to make a separate finding that the fee provided in the statutory schedule was inadequate.

Mikoll, Yesawich Jr. and Cardona, JJ., concur.

Crew III, J. (dissenting). I respectfully dissent. I agree with the majority that Judiciary Law § 474-a (4) provides for deviation from the statutory fee schedule where, due to extraordinary circumstances, *the compensation provided thereby is inadequate* and that the determination of whether a fee greater than that provided by the schedule is warranted is a matter of discretion vested in the trial court. However, I disagree with the majority's conclusion that Supreme Court was justified in awarding a greater fee based solely upon the extraordinary result achieved and the thorough and skilled professional services provided.

At the outset, I would note that Supreme Court seemingly misapprehended its role in the decision-making process dictated by the statute when it observed that it was empowered, "in its discretion, to fix compensation at an amount greater than the fee schedule set forth therein, if 'extraordinary circumstances' are found to be present". Thus, the court apparently determined that if a particular case can be said to be extraordinary, in the sense of the number of witnesses, the complexity of the issues and the length of time taken, then it has the discretion to deviate from the fee schedule without regard to whether the schedule adequately compensates the attorneys. If that was the basis for Supreme Court's decision, and I believe it was, then I am of the view that it abused its discretion.

I am also of the view that Supreme Court's observation, that labeling this case anything but extraordinary would serve to discourage attorneys from undertaking such difficult litigation in the future to the detriment of all potential plaintiffs, is contrary to the very etiology of the statutory scheme. The provisions of Judiciary Law § 474-a were based upon the recommendations of the McGill Commission *(see,* Governor's Mem, 1976 McKinney's Session Laws of NY, at 2461), which specifically undertook to establish a fee that was high enough to provide adequate incentives for plaintiffs' attorneys to undertake malpractice cases *(see,* Report of the Special Advisory Panel On Medical Malpractice, at 43) and served as the basis for the 1985 amendment to the statute establishing the present schedule (Executive Dept Mem, 1985 McKinney's Session Laws of NY, at 3022-3023). It is my view, therefore, that the fees established by the Legislature are presumptively reasonable and adequate, subject to proof to the contrary by a plaintiff's counsel *(see, Gair v Peck,* 6 NY2d 97, 113). In other words, attorneys should be provided the opportunity to over-

come the statutory presumption by demonstrating that the amount of the recovery in a given case is so small in relation to the services actually rendered that it would be inequitable to hold them to the statutorily prescribed fee *(see, Borgia v City of New York,* 42 Misc 2d 924, *affd* 20 AD2d 851, *affd* 15 NY2d 665). The focus of the "extraordinary circumstances" test, however, should be the relationship between the services provided and the compensation established by the fee schedule and not, as Supreme Court apparently believed, the extraordinary and complex nature of the underlying case.

In that regard, counsel here submitted extremely detailed time records in support of the application for additional fees. As pointed out by plaintiff Daniel A. Yalango, simple arithmetic, without regard to what portion of the total hours spent relate to partners, associates or paralegals, reveals that the firm would be compensated at a rate of $545 per hour under the fee schedule. While this may appear to be adequate compensation, I am of the view that such a determination cannot be made on the record before us. To that end, I agree with the majority that the standards set forth in *Matter of Freeman* (34 NY2d 1) are applicable in a trial court's determination of whether the amount of compensation provided under the fee schedule is adequate and how much, if any, additional compensation should be allowed. Notably absent from the record before us, however, is any indication of the customary fees charged by other attorneys of similar standing as that of plaintiffs' attorneys. It, of course, could be argued that no such comparison can be made, because plaintiffs' attorneys customarily are retained on a one-third contingency fee basis. This, however, begs the question, and I believe that analysis of the customary hourly fee rates of plaintiffs' attorneys, as well as other firms in the area, is essential to a determination of the adequacy of compensation in this and similar cases. Absent such analysis, a trial court simply cannot determine whether the fee schedule is inadequate. I do, of course, recognize that there are a number of factors justifying a contingent fee in excess of the customary hourly rate, including the fact that due to the uncertainty of a recovery, the attorney renders professional services at his or her peril *(see,* 7 NY Jur 2d, Attorneys at Law, § 139, at 34). But where, as here, Supreme Court simply mechanically designates one third as the appropriate amount of compensation, its action is wholly arbitrary and results in what appears to be excessive compensation.[1]

---

1. Based upon a flat one-third fee, plaintiffs' counsel is compensated at a rate in excess of $1,000 per hour.

As to the report of the guardian ad litem, appointed *sua sponte* by Supreme Court, I agree with Yalango that the report contains nothing but conclusory assertions based upon information dehors the record. In short, the guardian concludes that based upon his independent review of the file, as well as conversations he had with the attorneys who actually prosecuted plaintiffs' case, that the matter was extraordinary in nature, required more time than reflected in the time sheets supplied to the court by plaintiffs' counsel and warrants the award of additional fees. Supreme Court, however, was without any factual basis as to how much additional time was expended, which was not reflected in what otherwise appear to be meticulously kept time records, in order to justify deviation from the fee schedule. Furthermore, the need for a guardian, and the attendant expense thereof,[2] seems questionable inasmuch as it is clear that the Committee's interests were not adverse to those of Yalango, who was his ward *(see,* 2 Weinstein-Korn-Miller, NY Civ Prac ¶ 1202.01), and the Committee has steadfastly opposed an increase in fees.

Finally, I would note that the fact that Yalango's wife, who was then acting as his guardian, consented to an award of additional fees is of no moment in the circumstances of this case. To be sure, such consent in the ordinary case would and should weigh heavily in Supreme Court's determination. But where, as here, one of the parties is incapable of consent by reason of his incapacity, he then acts through his Committee which, as noted previously, specifically objects to an additional award.

Accordingly, I would reverse and remit the matter for further proof and consideration thereof in order to determine whether, in fact, extraordinary circumstances exist such that plaintiffs' attorneys will not be adequately compensated by the statutory fee schedule.

Ordered that the order and amended order are affirmed, without costs.

---

2. The sum of $4,733.75 was ordered to compensate the Guardian.