OPINION OF THE COURT
Charles E. Ramos, J.
This action was commenced on behalf of John Livigni, an infant, to recover for personal injuries sustained as a result of his being hit by a car, and on behalf of Donna Livigni, his natural mother, for loss of services.
The defendant has offered, and the plaintiff guardian has accepted, a “structured settlement”, as follows: (a) the guardian is to waiver her claim; (b) the defendant’s insurance carrier is to pay to the infant the sum of $22,163.67 on December 22, 1995, the infant plaintiff’s 18th birthday; and (c) the plaintiffs’ attorney is to receive the sum of $3,333.33 now.
The rationale for this settlement is that the present value of the settlement is $10,000 and that $22,163.67 to be paid to the infant plaintiff on his 18th birthday is the equivalent of his receiving $6,666.67 today. It is further argued that the benefit to the infant plaintiff is not diminished by such a delay in pay *346 ment, because pursuant to CPLR 1206, the infant plaintiff would not receive the benefit of the fund until his 18th birthday, in any event.
Notwithstanding the rationale asserted by the guardian, this proposed settlement is not approved.
CPLR 1206 provides that the property of an infant shall be turned over to his guardian, except that a court may order that money be invested in one or more insured banks, trust companies or in an account in an insured savings and loan association. Discretion to invest in high yield “savings certificates” or “money market” account is also conditioned on it being an “insured” investment. Insurance in this context generally means Federal Deposit Insurance Corporation coverage (FDIC).
There is no discretion in CPLR 1206 that the court can exercise that would permit uninsured investment, therefore, this proposed compromise must be rejected.
In addition, there is the practical consideration of the fluctuation in rates of interest. The value of the annuity to be purchased is determined by the rate of interest used in the calculation of present value versus future value. The selection of the rate of interest is arbitrary, because future rates of interest will, no doubt, vary. If the property of the infant is now deposited at the highest rate of interest in an insured account, as required by CPLR 1206, then the infant will receive the maximum benefit with no risk.
A troublesome aspect of this proposed settlement is the potential conflict of interest that such a “structured settlement” poses. The attorney for the infant plaintiff will receive a greater fee in the proposed settlement because presumably the defendant will profit by investing the moneys otherwise payable to an account for the infant plaintiff in its own business and therefore will offer a larger “present value” settlement than it otherwise would offer. Therefore, the attorney may be motivated to urge a “structured settlement” as a compromise, in order to inflate his fee, while at the same time diminishing or risking the infant plaintiff’s recovery.
In addition, even if this court were to assume that the “structured settlement” is presently worth $10,000, which this court does not, any increase in the rate of interest over the rate used to calculate present and future value, will diminish the value of the benefit to the plaintiff. Thus, this “structured settlement” could result in a recovery to the attorney of a fee well in excess of one third of the real value of the settlement (which will fluctuate *347 with the interest rate, as aforesaid). This result would be contrary to the rule that the attorney’s compensation for an infant’s compromise should never exceed one third of the total recovery. (See, Werner v Levine, 52 Misc 2d 653 [1967].)
Accordingly, the application is denied.