OPINION OF THE COURT
Howard Berler, J.
By an order dated March. 19, 2001, this Court denied the *136 proposed petitioners’ application for an order to show cause to commence a proceeding for the appointment of a guardian for their six-year-old son pursuant to article 81 of the Mental Hygiene Law. With the Court’s consent the proposed petitioners have now submitted an “attorney affirmation in support of jurisdiction” as their application to have the Court reconsider its prior determination.
In its previous decision, in which the Court considered the current proposed petitioners’ application together with an application for an order to show cause to commence a Mental Hygiene Law article 81 proceeding for a four-year-old child, this Court stated, in part:
“To warrant the appointment of a guardian pursuant to Mental Hygiene Law article 81 the Court must make findings with respect to:
“the person’s functional limitations which impair the person’s ability to provide for personal needs or property management;
“the person’s lack of understanding and appreciation of the nature and consequences of his or her functional limitations;
“the likelihood that the person will suffer harm because of the person’s functional limitations and inability to adequately understand and appreciate the nature and consequences of such functional limitations;
“the necessity of the appointment of a guardian to prevent such harm.
“(See, Mental Hygiene Law § 81.15 (b) (1), (2), (3), and (4), and § 81.15 (c) (2), (3), (4) and (6)).
“ ‘Functional limitations’ are defined as ‘behavior or conditions of a person which impair the ability to provide for personal needs and/or property management.’ Pursuant to this definition virtually any four or six-year-old child suffers from functional limitations. Moreover, such four or six-year-old is unable to understand and appreciate the nature and consequences of such functional limitations, which is a criterion among the facts and circumstances that the Court is directed to consider in assessing the appropriateness of the appointment of a Mental Hygiene Law article 81 guardian (see, Mental Hygiene Law § 81.02 (d)(2)). If, however, a four or six-year-old infant has attentive, caring, responsible and capable parents he or she will not suffer harm due to the functional limitations and inability to understand, whether or not such infant suffers *137 from disabilities. The parents will make the financial decisions affecting the infant as well as the decisions regarding personal needs including those regarding medical treatment and those concerning the residence of the infant. Thus, the present necessity for the appointment of a guardian cannot be established.”
In essence, the Court concluded that the petition failed to demonstrate, prima facie, that the requisite clear and convincing proof necessary to warrant the appointment of a Mental Hygiene Law article 81 guardian could be established.
In their current application the proposed petitioners have not addressed the Court’s statements in this regard and, thus, it remains the case that there has been no prima facie demonstration on the papers submitted that this is an appropriate case for the appointment of a Mental Hygiene Law article 81 guardian.
Indeed, the only reasons the Court can discern for the proposed petitioners’ application for a guardianship now is to allow them to invest the infant’s funds in a manner not authorized pursuant to article 12 of the CPLR (see, CPLR 1206 [c]; 1210 [d]; cf., Donato v Gonzalo, 145 Misc 2d 304 [Sup Ct, Suffolk County 1989]; Hilgarth v Costello, 132 Misc 2d 1020 [Suffolk County Ct 1986]), to allow them to spend his funds in a manner that might not be permitted under CPLR 1206 (c) and 1211, and rule 202.67 (f) and (g) of the Uniform Rules for Trial Courts (22 NYCRR) (see, e.g., Leon v Walker, 1 Misc 2d 219 [Sup Ct, NY County 1955]; De Marco v Seaman, 157 Misc 390 [Sup Ct, Queens County 1934]; see also, Matter of Curry, 128 Misc 2d 760 [Sur Ct, Dutchess County 1985]), and to allow the proposed petitioner, Susana Foreella, to receive a stipend for her services as guardian. Even if it is assumed that these are reasonable and meritorious purposes, they do not establish the requisite necessity of a Mental Hygiene Law article 81 guardianship. It may be noted that pursuant to SCPA 1708 (2) (c) (applicable to SCPA art 17-A guardianships pursuant to SCPA 1761) guardianship funds may be invested “with a bank, trust company, brokerage house, or other financial services entity acceptable to the court.” Further, pursuant to SCPA 1713 (1) (a) and (2) (applicable to SCPA art 17-A guardian-ships pursuant to SCPA 1761) a guardian may apply to the Court to apply the developmentally disabled person’s property to his or her support and education in an amount that is “reasonable, proper and just.” Moreover, upon a sufficient demonstration that the relief is warranted, compensation may be *138 paid, to Susana Forcella as a caregiver beyond her customary parental duties and obligations, under the authority of SCPA article 17-A, for the value of her efforts in tending to the special needs of Giancarlo (see, Kube v Petrovick, NYLJ, Aug. 23, 1994, at 25, col 1 [Sup Ct, Suffolk County]).
Notwithstanding that the Court’s prior determination was limited to the two cases before it, the proposed petitioners have set forth arguments seemingly intended to refute the perceived conclusion that this Court has determined that a Mental Hygiene Law article 81 guardianship is never appropriate for an infant.
For example, the proposed petitioners observe that Mental Hygiene Law § 81.19 (a) provides that among individuals who may be appointed guardians are parents under 18 years of age. This, they argue, establishes that it is appropriate to bring Mental Hygiene Law article 81 proceedings for minors, since if infant parents can be guardians then it is clear that individuals younger than such parents may be incapacitated persons subject to Mental Hygiene Law article 81 proceedings.
While neither the Law Revision Commission Comments nor McKinney’s Consolidated Laws Practice Commentaries explain the reason for the reference to parents under 18 years of age, it may be the case that without the formal appointment as a guardian an infant parent would not be able to enter into contracts or make other legal decisions on behalf of their minor children. Thus, a guardianship might be necessary in those cases to empower the minor parent to provide for the child’s needs in the same manner as could an adult parent (see generally, Michael U. v Jamie B., 160 Cal App 3d 193, 206 Cal Rptr 323 [Cal Ct App, 4th Dist 1984] [dissenting opn], revd 39 Cal 3d 787, 705 P2d 362, 218 Cal Rptr 39 [1985]; see also, Whitman v Kiger, 139 NC App 44, 533 SE2d 807 [2000]; Ex parte Odem, 537 So 2d 919 [Ala 1988], affg in part and revg in part Children’s Hosp. v Kelley, 537 So 2d 917 [Ala Civ App 1987]). In those circumstances the elements necessary for the appointment of the minor parent as guardian with specified powers could exist and render Mental Hygiene Law article 81 an appropriate vehicle for granting the minor parent the needed power or powers. Further, inasmuch as the statute (Mental Hygiene Law § 81.19 [a]) states that any person over the age of 18 is eligible to serve as a guardian, the next phrase, referring to any parent under the age of 18, was a necessary inclusion so as not to preclude a minor parent from being eligible to serve as the guardian for his or her own child in an appropriate case.
*139 The Court finds no basis for concluding that such reference to a parent under the age of 18 years of age was intended by the Legislature as a circuitous, blanket statement that the Mental Hygiene Law was intended to apply to infants generally and broadly.
The proposed petitioners also assert that because of the time and expense that they have expended in undertaking to commence a Mental Hygiene Law article 81 proceeding there would be no benefit in terms of effort or cost in relegating them to an SCPA article 17-A proceeding. The Court finds this argument unpersuasive. If the Court concludes that a Mental Hygiene Law article 81 proceeding is not the appropriate vehicle for establishing a guardianship, its decision should not be swayed merely because counsel for the proposed petitioners had a different view and chose to pursue that remedy.*
Another argument raised by the proposed petitioners is that Giancarlo Forcella may not qualify for an SCPA article 17-A guardian. Counsel asserts: “He is incapacitated due to the cortical blindness, head injury and concomitant lack of emotional restraint, but his developmental disability is not his primary diagnosis.” This statement, made by counsel, may be at variance with the proposed petitioners’ representation in the original petition that Giancarlo Forcella “suffered a traumatic brain injury which resulted in cortical blindness and cognitive developmental delays.” Thus, the description of Giancarlo’s disability given by the proposed petitioners seems to fall squarely within the contemplation of SCPA 1750-a (1) inasmuch as the allegations in the petition are consistent with the statutory requirement that the proposed ward has
“an impaired ability to understand and appreciate the nature and consequences of decisions which result in such person being incapable of managing himself or herself and/or his or her affairs by reason of developmental disability and that such condition is permanent in nature or likely to continue indefinitely, and whose disability * * *
“is attributable to * * * traumatic head injury.”
*140 Thus, if the petition has honestly and accurately stated the nature of Giancarlo Forcella’s condition, the probability that he will not qualify for a SCPA article 17-A guardian seems remote.
The proposed petitioners also contend that a SCPA article 17-A guardianship might not be appropriate for Giancarlo Forcella when he reaches the age of 18 if he makes hoped-for progress that would warrant him having greater independence than could be granted to a ward with a SCPA article 17-A guardian. This argument is predicated on the hopeful speculation that Giancarlo Forcella will be able to manage his own affairs to a degree greater than is permitted to a SCPA ward. The Court notes that no reference was made to anticipated improvement in Giancarlo’s condition in the original petition in which it was asserted: “Petitioners believe that giancarlo forcella is likely to suffer harm because he is unable to manage his funds and unable to realize the consequences of this inability, which will continue past his 18th birthday,” and that the petitioners “believe that giancarlo forcella is likely to suffer harm because he is unable to consent to or refuse medical treatment or make reasoned decisions about his personal life and needs and is likely to suffer harm from such inability, which will continue past his 18th birthday.” Nevertheless, if, in fact such progress is made, and the SCPA article 17-A guardianship is rendered inappropriate when he reaches the age of 18, then it might be advisable to apply for a Mental Hygiene Law article 81 guardianship at that time. The proposed petitioners assert that to allow the Mental Hygiene Law article 81 guardianship presently would avoid the potential for them being required to commence such a proceeding in the future. What merit there may appear to be in this argument stems from what may be a deficiency in the legislative design. The Legislature has seen fit to establish, through SCPA article 17-A, a guardianship scheme that, while being more appropriate to the circumstances as they presently appear to exist, does not have the flexibility of Mental Hygiene Law article 81. It seems, therefore, that the petitioners’ dissatisfaction should be directed toward the Legislature, and not this Court’s application of its enactments.
In view of the foregoing, it remains this Court’s view that the proposed petitioners have not demonstrated that a Mental Hygiene Law article 81 proceeding is appropriate at this time.
Notwithstanding the Court’s conclusion herein, the absence of appellate authority providing guidance leaves in doubt the question of when Mental Hygiene Law article 81 may be *141 properly employed to secure the appointment of a guardian for an infant. Perhaps an application by the proposed petitioners to the Appellate Division pursuant to CPLR 5704 (a) would yield firm, articulated guidelines.
Presently, however, it is ordered that the Court adheres to its prior determination and the application for an order to show cause to commence a Mental Hygiene Law article 81 proceeding is denied.

 In its earlier decision and order dated March 19, 2001, this Court observed that there are “some procedural and cost advantages to a proceeding under SCPA article 17-A as compared to Mental Hygiene Law article 81.” The Court notes that in a publication entitled Planning for the Future — A Guide for Families and Friends of People with Developmental Disabilities (3d ed 1998), issued by the New York State Developmental Disabilities Planning Council, it is stated: “Article 17-A is usually the quicker and less expensive route to the appointment of a guardian.”